[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is a former tenant of the defendant who brings this action for money damages, attorneys' fees and punitive damages. The plaintiff alleges that the defendant, acting through an agent, entered the plaintiff's apartment while he was still in possession and removed his furniture and belongings to the exterior of the building where they were damaged or taken by others, a violation of the Entry and Detainer statute, Connecticut General Statutes 47a-43 et seq. The plaintiff further claims an award equal to twice the value of his security deposit under Connecticut General Statutes 47a-21(d)(2) as a result of the defendant's failure to return plaintiff's security deposit and failure to explain in writing why it was not being returned. The plaintiff alleges that both these claims give rise also to claims for attorneys' fees and punitive damages under the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes 42a-110a et seq. The plaintiff's final claim, raised in the alternative to the entry and detainer claim, is one of negligence, that defendant failed to use reasonable care to provide adequate security at the plaintiff's apartment building. The defendant disputes all of these claims and has filed a counterclaim for unpaid rent and use and occupancy and for damage to the premises.
The defendant is the owner of an apartment building at 240 Sheffield Avenue in New Haven. Beginning in March, 1990, the plaintiff rented Apartment 4B at the property, a large efficiency apartment on the second floor. The plaintiff lived at the apartment with his girlfriend, Cynthia Jowers. Only the plaintiff, the defendant and Ms. Jowers had keys to the apartment. The plaintiff rented the apartment on a month-to-month basis at a rental of $400. per month. He paid the defendant a $400. security deposit.
On April 12, 1991, the defendant had the plaintiff served with a notice to quit for non-payment of rent. The quit date was CT Page 9103 April 26, 1991. The plaintiff remained in possession of the apartment. On May 8, 1991, the defendant had the plaintiff served with a summary process writ, summons and complaint. The return date on the writ was June 4, 1991. The plaintiff still remained in possession.
The plaintiff worked two jobs each day from 7 o'clock a.m. until midnight. Around midnight on May 28 he arrived at the apartment to find that the air conditioner in his second floor apartment had been pushed out the window and some money was missing from the apartment. The plaintiff called the police, who verified the damage to the air conditioner and found that there were no signs of a forced entry into the apartment. The defendant had previously complained to the plaintiff about the water dripping from the plaintiff's air conditioner.
On June 4, the plaintiff filed an appearance in the summary process matter and on June 7, he filed an answer contesting the eviction and raising several special defenses, including the lack of a smoke detector. On June 8, there was another incident at the apartment. When the plaintiff came home from work on June 8, he found that his television had been damaged and the knobs had been broken off his stereo. The plaintiff again called the police, who verified that there were no signs of forced entry. The plaintiff testified that on both June 8 and May 28 he found the apartment door locked when he arrived home.
The summary process trial between plaintiff and defendant was scheduled for June 26. The plaintiff did not appear for trial and default judgment entered against him. At about this same time, the plaintiff filed a complaint with the Post Office claiming that the defendant Mr. McFarlane, who also lived at 240 Sheffield Avenue, was tampering with the plaintiff's mail. By letter dated June 26, a postal inspector notified the defendant of the complaint and advised the defendant that delaying, obstructing or tampering with mail addressed to another person are violations of the U.S. Criminal Code.
The plaintiff thereafter received notice of the default judgment against him and on July 2 he filed a motion to reopen the summary process default judgment. He stated in his affidavit that he had not been receiving any mail since the beginning of the summary process action and he attached to his motion a copy of the postal inspector's letter to the defendant, dated the same date as the scheduled trial date. CT Page 9104
On July 3, the day after the filing of the motion to reopen, the plaintiff returned to the apartment and found the apartment door wide open, propped open by a bucket which the plaintiff recognized as belonging to the defendant. The bucket contained the defendant's tools. (By this time the plaintiff was no longer staying at the apartment each night because there had been a third incident of damage to his property inside the locked apartment.) The plaintiff again called the police, who investigated briefly.
A hearing on the plaintiff's motion to re-open was scheduled for July 10. On that date the parties entered into a written stipulation that the motion to re-open would be marked off and that the plaintiff here, Mr. Slaughter, would have a final stay of execution through July 16, 1991. The stipulation, which was signed by Mr. McFarlane personally, contained other terms including an agreement that Mr. McFarlane would not harass Mr. Slaughter. Ms. Jowers was present for the conference at which the stipulation was drafted and she gave Mr. McFarlane her key to the apartment at that time. She was no longer living at the apartment.
On July 15 the plaintiff came to the apartment building on Sheffield Avenue to check on his furniture and prepare to move. He was planning to move the next day, which was the final date of his stay of execution. He found some of his furniture and belongings tossed around in disarray outside the apartment building next to the front steps. The more valuable items were missing and what remained was damaged. He went to his apartment and found the door locked. Inside he found a few small items, including some rags. All his furniture was missing. The plaintiff again called the police.
To establish the liability of the defendant for the removal of the plaintiff's furniture from the apartment and the damage to and loss of the furniture after its removal, the plaintiff offered the testimony of two witnesses who observed the removal of the plaintiff's furniture. Jesse Reed lives at 245 Sheffield Avenue, directly across the street from the defendant's apartment building. On a Saturday morning in July of 1991, Mr. Reed was sitting in his apartment window and saw a man he knew to be Alex Haynes moving furniture out of the building. Mr. Haynes was, and still is, a tenant in the defendant's building at 240 Sheffield Avenue. CT Page 9105
Mr. Reed saw Mr. Haynes remove a television, a bed, dishes, an air conditioner, a dresser and other items. He did not see anyone outside the building assisting Mr. Haynes, but he did see someone standing inside the building. The front glass door had been propped open. Approximately fifteen or twenty minutes after Mr. Haynes stopped moving furniture, the defendant, Orville McFarlane, came outside the building and looked at all of the furniture, although he did not touch any of it. Mr. Reed did not see the defendant speak with Mr. Haynes at any time. After the defendant left, people happening by looked at the furniture and took away what they wanted. All of this furniture belonged to the plaintiff.
Fred Chisolm is a friend of Jesse Reed's. They have coffee together each morning and Mr. Chisolm was sitting with Mr. Reed on the morning in question. Mr. Chisolm testified that he saw the defendant Orville McFarlane open the door to the apartment building at 240 Sheffield Avenue and then place something to prop the door open. Alex Haynes then began bringing out furniture. Mr. Chisolm saw Mr. Haynes bring out beds, a television, a dresser, lamps and a coffee table. He testified that Mr. Haynes spent between half an hour and forty-five minutes removing the furniture and he saw the defendant twice during the move. Each time Mr. McFarlane came to the front door, stood there and then went back in. The defendant did this when Mr. Haynes was bringing out a large piece of furniture. Mr. Chisolm did not see the defendant and Mr. Haynes converse with one another. Based on the testimony of these two witnesses, the plaintiff asks the court to find that Alex Haynes removed the plaintiff's furniture and that he did so as the agent of the defendant.
The defendant denies the plaintiff's claim. In his testimony, he denied that he hired or authorized Mr. Haynes to remove the plaintiff's furniture and he further testified that he was in Delaware from July 12 until July 15, 1991. Although the defendant maintains an apartment in the Sheffield Avenue apartment building, he spends most weekends in Delaware, where his wife resides and works. Mrs. McFarlane testified that her husband spends 90% of the weekends in Delaware, usually arriving on Friday, and the remaining 10% in New Haven. Although she testified that he was in Delaware from July 12 until July 15, 1991, she readily admitted on cross-examination that they kept no calendar or records of his weekends in Delaware, that she never knew of this lawsuit until approximately June of 1992, almost a CT Page 9106 year after the dates in question, and that she really could not say whether he was in New Haven or Delaware for any particular weekend.
Alex Haynes testified that he did not remove any furniture at the behest of the defendant on July 12 or 13, 1991 and that he was not hired or asked by the defendant to remove the plaintiff's belongings. He testified that he did not remember the defendant being in the building that weekend, that the defendant is away each weekend except in bad weather and that he did not see the defendant's car from July 12 to July 15.
The court finds that the testimony of Mr. Reed and Mr. Chisolm is more credible than that of Mr. Haynes and Mr. McFarlane. Mr. Reed and Mr. Chisolm are not parties to this case and are not implicated by any of the allegations. They testified credibly and consistently with the police report concerning the plaintiff's complaint on July 15. Their recollections were clear and substantially the same, although not identical with respect to each detail. Mr. Haynes himself admitted that neither Mr. Chisolm nor Mr. Reed have bad feelings toward him and that he did not know any reason why either of them would say something about him which was untrue.
The defendant unsuccessfully attempted to attack the credibility of Mr. Chisolm and Mr. Reed, first by questioning whether the furniture was moved on a Friday or a Saturday. Both men reasonably admitted it might have been a Friday, but each credibly testified that he believed it happened on a Saturday. (There was evidence that Alex Haynes was at work from approximately 7:30 a.m. on Friday, July 12, until 4:00 p.m., but he did not work on Saturday.) The defendant established that Mr. Reed is a friend of the plaintiff's and that the plaintiff lived with Mr. Reed for a period of time after his furniture was moved. Mr. Chisolm admitted that the defendant had evicted him a few years earlier. The defendant, however, failed to establish that either of these relationships caused the witnesses to create or color their testimony. The police report of July 15 shows that Mr. Reed's testimony at trial was consistent with his contemporaneous statements to the police. The testimony of Mr. Haynes and the defendant was considerably less persuasive than that of Mr. Reed and Mr. Chisolm.
The court finds that on Saturday, July 13, 1991, Alex Haynes removed the plaintiff's furniture from his apartment and placed CT Page 9107 it outside, that the defendant opened the building door and propped it open just before the moving began, that he was present in the building and observable at times during the move, particularly when a large item of furniture was moved, and that he examined the furniture on the outside of the building after the move was over. The court further finds that when Alex Haynes removed the plaintiff's furniture, he was acting as the agent of the defendant.
Three elements are required to demonstrate an agency relationship: "(1) manifestation by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) understanding between the parties that the principal will be in control of the undertaking. Restatement (Second), 1 Agency 1, comment b (1958)" Beckenstein v. Potter Carrier, Inc.,191 Conn. 120, 133 (1983), citing Botticello v. Stefanovicz,177 Conn. 22, 25 (1979). One essential ingredient of agency is that the agent is acting at the behest of and for the benefit of the principal. Leary v. Johnson, 159 Conn. 101, 105-106 (1970) (Citations omitted.) "The existence of an implied agency is essentially a question of fact the proof of which is generally found in the acts and conduct of the parties." Id. at 105.
The defendant's actions in initiating the removal of plaintiff's furniture, by opening the front door of the building and propping it open, by watching Mr. Haynes remove the furniture and then by examining the furniture after it had all been placed outside demonstrate that the defendant was in control of this undertaking and that the defendant wanted Mr. Haynes to remove the furniture for the defendant's benefit. Mr. Haynes' willingness to remove the furniture under the defendant's control demonstrated his acceptance of the undertaking as the defendant's agent. There can be no question that Mr. Haynes was acting at the behest of Mr. McFarlane and for Mr. McFarlane's benefit. Since April, Mr. McFarlane had wanted Mr. Slaughter to vacate the apartment. He importuned Mr. Haynes to accomplish that result. There was no evidence whatsoever of any benefit to Mr. Haynes from removing the plaintiff's furniture to the exterior of the building. There was no evidence of any relationship at all between the plaintiff and Mr. Haynes; Mr. Haynes testified that he did not know Mr. Slaughter. Moreover, on July 13, 1991, only the plaintiff and the defendant had keys to the plaintiff's apartment. Mr. Haynes' actions are utterly inexplicable except that he was acting as agent for the defendant, who wanted the plaintiff to vacate the apartment. CT Page 9108
The plaintiff is entitled to an award of damages under the Entry and Detainer statute, Connecticut General Statutes 47a-43
et seq. The plaintiff testified that what was missing included four bar stools, a stereo and tape player, chairs, lamps, three televisions, two cameras, two recliners, a bed and mattress, a sofa bed, dishes, an air conditioner, a dresser and other items. His testimony was corroborated by that of Ms. Jowers. Most of the larger items were recited by Mr. Reed and Mr. Chisolm as items they saw Mr. Haynes put outside the building. The plaintiff testified that all of the items were used except for the bar stools, and almost all were purchased from friends or at flea markets. He testified to the cost of each of the items. The owner of property is competent to testify to its value. Shane v. Tabor, 5 Conn. App. 363 (1985). The costs attributed to the items by the defendant were modest; i.e., $50. for a used recliner, $10. for an iron chair, $100. for a used sofa bed. The plaintiff's post-trial memorandum sets forth the list and the value, which totals $1,756.
The defendant argues that these items were not in the apartment and that if they were, the plaintiff has not met his burden of proving value. Defendant's claim that the items were not in the apartment is based primarily on the testimony of Officer Lamb from the New Haven Police Department. He responded to the plaintiff's complaint on July 3, when the plaintiff had returned to the apartment to find the door propped wide open. Officer Lamb began his testimony by stating that his memory of the call was vague and that he was not sure that he could recognize the complainant. His contemporaneous police report was introduced and it reads in part, "The apt. doesn't appear as if any one is living in it. There is a bed set up with mattress, and items all over the floor. Complainant states he lives there sometime." At trial, Officer Lamb having earlier testified that his recollection was vague, testified that the "items" on the floor were "junk."
The plaintiff and Ms. Jowers testified that the officer was there for only about five minutes and had little opportunity to examine the interior of the apartment, focused as he was on the open door. Office Lamb admitted he did not see into any closets. The court gives little weight to the officer's description of what was in the apartment as "junk." This was not the identification which he employed in his contemporaneous report. Moreover, one's personal belongings, however modest, have value. CT Page 9109 The court credits the testimony of the plaintiff, Ms. Jowers, Mr. Reed and Mr. Chisolm, rather than that of Officer Lamb.
As to value of the personal property, the defendant argues that the plaintiff's failure to produce receipts, verification or expert witnesses renders his testimony insufficient. This is not the law. Under Shane v. Tabor, supra, the plaintiff as owner is competent to testify to the value of his property. The court found his testimony credible and the values he attached reasonable and modest. The plaintiff is awarded $1,756. in actual damages.
The plaintiff also seeks an award of double damages under Connecticut General Statutes 47a-46. In Freeman v. Alamo Management Co., 221 Conn. 674 (1992), the Supreme Court held that double damages may be awarded where the illegal entry and detainer has been established by a fair preponderance of the evidence and where the court finds that such an award is appropriate. An award of double damages is appropriate here for at least two reasons. First, the defendant's actions were not only in violation of the law, but also directly in violation of the stipulated judgment in the summary process action, which provided for a stay of execution through July 16. The defendant knew he (or his agent) should not enter the plaintiff's apartment prior to July 16 because, as Ms. Jowers testified, he was told by the Housing Specialist that "he wasn't allowed into the apartment until after we got our stuff out. . . we had until the 16th to get it out." Secondly, the defendant's actions in causing the plaintiff's furniture to be moved outside the apartment building and left there so passers-by could scavenge and remove what they wished is a particularly egregious violation of the plaintiff's rights which warrants an award of double damages. The plaintiff is awarded an additional $1,756. by way of double damages.
The plaintiff's next claim is for an award of $800., which is double the plaintiff's security deposit. There is no dispute that the defendant held a $400. security deposit from the plaintiff. The defendant did not return the plaintiff's security deposit after the plaintiff vacated the apartment. Nor did the defendant ever write the plaintiff and provide a written explanation of the disposition of the security deposit as required by Connecticut General Statutes 47a-21(d)(2), despite the plaintiff's written notification to the landlord of the tenant's forwarding address. The plaintiff is awarded $800. damages. CT Page 9110
The plaintiff's next claim is that the defendant's actions with regard to the removal of plaintiff's furniture constitute a violation of CUTPA, giving rise to an award of attorneys' fees. (Although the complaint seeks punitive damages under CUTPA also, this claim was not briefed by the plaintiff, perhaps because of the request for double damages under the entry and detainer statute, and it is deemed abandoned).
"Trade" and "Commerce" as defined under CUTPA include the rental or leasing of real property. Connecticut General Statutes 42a-110a(4). The defendant's violation of the plaintiff's right of possession and his right to be dispossessed only pursuant to an execution issued pursuant to the summary process stipulated judgment constitute a violation of public policy, as a result of which the plaintiff has suffered an "ascertainable loss." Connecticut General Statutes 42-110g(a). CUTPA violations are frequently found where liability is established in entry and detainer actions, Viera et al. v. Wirth et al., 12 CLT No. 45 (Nov. 17, 1986); John Hay Benevolent Association v. William Gelinas, 16 CLT (Jan. 8, 1990). The Connecticut Supreme Court has held that a CUTPA violation "certainly" can be found based on a violation of Connecticut General Statutes 47a-43(a); Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243 (1988). All of the requirements of the so-called "cigarette rule," FTC v. Sperry Hutchinson Co., 405 U.S. 233 (1972), are met by the facts here. The court finds that the defendant has violated CUTPA and the plaintiff is entitled to an award of attorneys' fees.
With respect to the amount of attorneys' fees to be awarded, Connecticut General Statutes 42-110g(d) provides that the court may award reasonable attorneys' fees "based on the work reasonably performed by an attorney and not on the amount of recovery." The Appellate Court has indicated that Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974) sets forth the factors to be considered by the trial court to determine the amount of attorneys' fees to be awarded under CUTPA. Hernandez v. Monterey Village Associates Limited Partnership, 24 Conn. App. 527, n. 1 (1991). At the outset of trial, the parties agreed with the court's suggestion that the matter of attorneys' fees be deferred pending a ruling on the merits of the case. A further hearing will be held and a supplemental judgment for attorneys' fees will be entered after that hearing.
CT Page 9111 The plaintiff's Count Four, claiming negligence by the defendant in permitting the breach of security which resulted in the defendant's loss of his furniture, is understood by the court to be a claim alternative to the entry and detainer claim. The plaintiff has prevailed on the entry and detainer claim and the court therefore enters judgment for the defendant on Count Four.
The defendant filed a counterclaim seeking an award of damages from the plaintiff for unpaid rent and use and occupancy from March 1991 until July 15, 1991 and for repairs to the apartment after the plaintiff vacated. The plaintiff defends the claim for rent and use and occupancy by contending that his apartment was not furnished by the defendant with a smoke detector.
It is well-established that the failure to provide smoke detectors in apartment dwelling units relieves the tenant of any obligation to pay rent. Tucker v. Lopez, 38 Conn. Sup. 67
(1982). The defendant claims there was a smoke detector provided in the apartment, but he offered no substantiation or corroboration of this claim. The plaintiff testified that because he worked at one time remodeling apartments, he knew that there was a requirement that smoke detectors be provided. He testified that there was never a smoke detector in the apartment. The plaintiff's testimony is corroborated by the answer which he filed in the summary process action between the parties. Representing himself pro se, the defendant filed an answer before the current dispute had arisen stating that there were no smoke detectors in the apartment. The court finds the plaintiff's testimony is more credible and finds that no rent is due.
The defendant failed to establish his burden of proof with respect to his remaining claims. With respect to his use and occupancy claim, he did not present any testimony, his own or that of an expert, as to the fair rental value of the premises. He simply testified that he wanted use and occupancy of $400. per month. Even if that were to be interpreted as evidence of fair rental value, it cannot be accepted because of the absence of smoke detectors, which would have a material impact on the fair rental value of the apartment.
The defendant claimed that the plaintiff damaged the walls, carpeting and windows of the plaintiff's apartment. The claims were vague — the wall was "messed up," the carpeting (which is twenty-two years old) was "filthy." The alleged damage was CT Page 9112 uncorroborated by photographs or the testimony of other witnesses and was denied by the plaintiff and Ms. Jowers. The defendant failed to testify to the condition of the walls, carpeting and windows before the plaintiff moved in. To recover for damages to leased premises, the landlord must establish the condition of the premises prior to the tenant moving in. Wareck v. Connecticut Chair Car, Inc., Docket No. CVNH 8904-3131, New Haven Housing Session #557. The defendant also failed to establish that the damage, if any, was beyond normal wear and tear. The defendant failed to sustain his burden of proof on the counterclaim.
Judgment is entered for the plaintiff for $4,312. total damages plus costs. A supplemental judgment for attorneys' fees will be entered after further hearing.
Vertefeuille, J.